IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

MICHAEL PRENDERGAST,

      Plaintiff,

vs.                                                             CIV 07-1265 CG/LFG

FUNDAMENTAL LONG TERM
CARE HOLDINGS, LLC, et al.,

      Defendants.

**MEMORANDUM OPINION AND ORDER ON DEFENDANTS' MOTION FOR
SUMMARY JUDGMENT RE: SINGLE EMPLOYER STATUS**

      This matter comes before the Court upon "Defendants Fundamental Long Term Holdings, LLC, THI of Baltimore, Inc., THI of New Mexico, LLC, Fundamental Administrative Services, LLC, and Fundamental Clinical Consulting, LLC's Motion for Summary Judgment Re: Single Employer Status" and Memorandum Brief in support thereof (docket nos. 166, 167), filed May 8, 2009; "Plaintiff's Response to Defendants' Motion for Summary Judgment Regarding Single Employer Status" (docket no. 178), filed May 28, 2009; and "Defendants' Reply in Support of their Motion for Summary Judgment Re: Single Employer Status" (docket no. 183), filed June 15, 2009.  For the reasons below, the Court finds Defendants' motion should be denied.

**Procedural Background**

      On December 17, 2007, Michael Prendergast ("Mr. Prendergast" or "Plaintiff") filed his "Complaint for Damages for Violation of Fair Labor Standards Act, Retaliatory Discharge and Personal Injury."  Docket no. 1 ("Plaintiff's Original Complaint").  Plaintiff's Original Complaint names as Defendants Valle Norte, Fundamental Long Term Care Holdings, LLC

d/b/a GTCR Fund VI, LP ("FLTCH"), THI of Baltimore, Inc. ("THI Baltimore"), THI of New Mexico, LLC ("THI New Mexico"), Fundamental Long Term Care Interim Management, LLC, and THI Holdings, LLC. Id. On February 20, 2009, Mr. Prendergast filed his "First Amended Complaint for Damages for Violation of Fair Labor Standards Act and Retaliatory Discharge."[1] Docket no. 132 ("Plaintiff's First Amended Complaint"). Plaintiff's First Amended Complaint does not name Fundamental Long Term Care Interim Management, LLC or THI Holdings, LLC as Defendants, but adds Fundamental Administrative Services, LLC ("FAS") and Fundamental Clinical Consulting, LLC ("FCC"). Id. Thus, the six named Defendants in Plaintiff's First Amended Complaint are: Valle Norte, FLTCH, THI Baltimore, THI New Mexico, FAS, and FCC. Id. All of the parties have consented to the undersigned pursuant to 28 U.S.C. § 636(c). See docket nos. 3, 9, 28 and 193.

Plaintiff's First Amended Complaint alleges the case arises under the Fair Labor Standards Act, 29 U.S.C. § 209, et seq. ("FLSA"), and New Mexico common law. See docket no. 132 at 1. Mr. Prendergast contends that "as a single employer," Defendants Valle Norte, FLTCH, THI Baltimore, THI New Mexico, FAS and FCC were Plaintiff's "'employers' within the meaning of the FLSA." Id. at 3. On March 9, 2009, Defendants Valle Norte, FLTCH, THI Baltimore, THI New Mexico, FAS, and FCC filed their Answer to Plaintiff's First Amended Complaint. See docket no. 137 ("Defendants' Answer"). Defendants' Answer essentially denies all of the substantive allegations in Plaintiff's First Amended Complaint. See id.

On May 8, 2009, Defendants FLTCH, THI Baltimore, THI New Mexico, FAS, and FCC

---

[1] Mr. Prendergast filed a motion to amend his complaint on January 2, 2009, and the motion was granted on February 19, 2009, leading to the filing of the amended complaint on February 20, 2009. See docket nos. 84 and 127.

filed their "Motion for Summary Judgment Re: Single Employer Status," along with a Memorandum Brief in support thereof.  <u>See</u> docket nos. 166 and 167.  The memorandum argues that Valle Norte was Plaintiff's employer and that the other five named Defendants along with Valle Norte do not constitute a "single employer."  <u>Id.</u>  As such, according to Defendants, judgment in favor of FLTCH, THI Baltimore, THI New Mexico, FAS, and FCC should be granted.  <u>Id.</u>  On May 28, 2009, Plaintiff filed a response in opposition to Defendants' Motion for Summary Judgment, arguing that all named Defendants are properly sued as a "single employer" of Mr. Prendergast.  <u>See</u> docket no. 178.  On June 15, 2009, Defendants filed a reply.  <u>See</u> docket no. 183.

## Factual Background

The following facts, unless otherwise indicated, are undisputed.  For purposes of the Motion for Summary Judgment filed by Defendants FLTCH, THI Baltimore, THI New Mexico, FAS, and FCC, all reasonable factual inferences are viewed in the light most favorable to Plaintiff.  <u>See</u> <u>Atlantic Richfield Co. v. Farm Credit Bank of Wichita</u>, 226 F.3d 1138, 1148 (10th Cir. 2000).

On or about August 30, 2006, Mr. Prendergast was hired as maintenance director at the Valle Norte Caring Center in Albuquerque, New Mexico.  <u>See</u> docket no. 169, exhibit 1.  For the majority of Mr. Prendergast's employment, he was supervised by Facility Administrator Dona Felton ("Ms. Felton").  After Ms. Felton resigned, Plaintiff was supervised by Jaime Andujo ("Mr. Andujo").  <u>See</u> docket no. 177, exhibit A.  During Plaintiff's employment, Mr. Andujo also acted as Regional Director of Operations ("RDO") for Valle Norte and approximately 11 other nursing facilities in New Mexico.  <u>See</u> <u>id.</u>, exhibit F.  Among other duties, Mr. Andujo advised these facilities about how to increase profits, in addition to being responsible for

ensuring that his facilities "met and exceeded" their budget expectations, as his bonuses were tied to the financial performance of these facilities.  See id.

Mr. Andujo also serves as THI New Mexico's sole officer.  See id., exhibit C.  FLTCH is the sole shareholder of THI Baltimore, THI Baltimore is the sole member of THI New Mexico, which, in turn, is the sole member of Valle Norte.  See docket no. 167 at 2.  The Directors of Valle Norte were W. Bradley Bennett ("Mr. Bennett") and Mark Fulchino ("Mr. Fulchino") from January to July 2006.  See docket no. 178, exhibit A.  Valle Norte's officers during the same period were Mr. Bennett, Mr. Fulchino, Toni-Jean Lisa ("Ms. Lisa"), Sean Nolan ("Mr. Nolan"), Kimberly McCarty ("Ms. McCarty"), and Melissa Warlow ("Ms. Warlow").  Id.  Valle Norte is managed by a "governing body" consisting of the facility administrator, the Director of Nursing ("DON") and the RDO.  Id., exhibit B.  RDOs, such as Mr. Andujo, are employed by Defendant FCC.  Id.  The only officer of Defendant THI New Mexico, as stated above, is the current RDO for the state, Mr. Andujo.  Id.  Defendant THI Baltimore's officers and directors are Ken Tabler ("Mr. Tabler"), who is also Vice President of Finance for FAS, Mr. Bennett, and Mr. Fulchino.  Prior to March 2006, THI Baltimore's officers included Ms. Lisa, Mr. Nolan, Ms. McCarty, and Ms. Warlow, who are all also FAS employees.  Id.  THI Baltimore's officers do not perform any duties for the entity.  Id.  THI Baltimore's address is 930 Ridgebrook Road, Sparks, Maryland, which is the same address as FLTCH.  Id., exhibits C and D.

FLTCH is owned solely by Murray Foreman ("Mr. Foreman") and Leonard Grunstein ("Mr. Grunstein"), the only officers and directors in a company with no employees.  Id., exhibit D.  When FLTCH acquired THI Baltimore in March 2006, it created Defendants FCC and FAS to do the work that THI Baltimore Management, LLC, which is now defunct, had been doing.  Id., exhibit B.  Employees of THI Baltimore Management, LLC became employees of FAS or

4

FCC depending on their duties. Id. THI Baltimore Management, LLC's directors were Mr. Bennett and Mr. Fulchino, its officers were Mr. Bennett, Mr. Fulchino, Ms. Lisa, Mr. Nolan, Ms. McCarty, Ms. Warlow, and Mr. Tabler, and its address was 930 Ridgebrook Road, Sparks, Maryland. Id., exhibit E. These are the same directors, officers, and address that FAS has now. Id. FCC's address is in Texas and its officers and directors are Mr. Hillegass and Karen McDonald ("Ms. McDonald"). Id.

The FAS and FCC contracts are materially the same for every one of approximately 100 care facilities,[2] including Valle Norte. Id., exhibit D. The FAS management fee is 4% of net operating revenue and the FCC fee is 1%. Id. FAS calculates the fees that are owed for the facilities that it serves and pays the vendors, rent, and all operating expenses for the facilities. Id. Christine Zack ("Ms. Zack"), an in-house attorney, holds the position of Senior Vice President for FAS, and though she has no direct supervisor, she presumes her employment is controlled by FLTCH shareholder Mr. Foreman. Id., exhibit B. Mr. Tabler, an officer and director of THI Baltimore as well as Vice President of Finance for FAS, reports to Mark Fulchino, who is the CFO for FAS. Id.

THI New Mexico's apparently sole officer, Mr. Andujo, has testified that he did not know the purpose of THI New Mexico, whether it had any financial statements, or whether it had any other officers. Id., exhibit C. Further, Mr. Andujo, who was technically also an employee of FCC reports to Mr. Hillegass in Texas and oversaw 12 facilities covered by the

---

[2] All facilities have the same handbook, the same policies, the same employee benefits, and the same 401(k) plan. See id., exhibits C, D, and G. They have the same internet provider and protocol for conducting background checks on employees. See id., exhibit G. There is one benefits coordinator for FAS who works with the HR/payroll employee at each facility regarding employee benefits. See id., exhibit B.

FAS and FCC contracts. Id., exhibit C. Mr. Andujo's physical office is in the Valle Norte facility. Id.

During Plaintiff's employment, Lanny Dosher ("Mr. Dosher") was the Divisional Construction Maintenance Director for 42 facilities, including Valle Norte. Id., exhibit G. Mr. Dosher, though also technically employed by FCC, was responsible for overseeing facility construction projects, for approving funds for facility capital expenditures, and for making final decisions as to cost effectiveness. Id. Mr. Dosher made clear to Ms. Felton, the facility Administrator and Mr. Prendergast's direct supervisor, that he disliked Plaintiff's numerous complaints about the physical state of the facility and his efforts to remedy the problems he encountered, referring to Mr. Prendergast as a "loose cannon." Id., exhibit E and K.

Ms. Felton resigned her position at Valle Norte in May 2007 due to her observations of upper management's lack of concern or attention to the safety and well-being of staff and residents. See id., exhibit K. She indicates that she "observed significant problems while at Valle Norte," but "was not allowed to sufficiently address these problems due to managements's apparent overriding concern with the 'bottom line.'" Id. With respect to Plaintiff, Ms. Felton has stated "[o]n a number of occasions, [Mr.] Prendergast would not clock in when he needed to perform work at Valle Norte after business hours due to emergency situations," a situation complicated by the fact that Plaintiff "had previously been verbally reprimanded and warned by [Mr.] Andujo about working extra overtime." Id. Mr. Andujo, THI New Mexico's sole officer who reported to Mr. Hillegass at FCC, supervised Plaintiff for the remainder of his employment at the Valle Norte facility. See id., exhibit A. Mr. Prendergast was terminated shortly after Ms. Felton's resignation, however, Mr. Andujo and Karen Miller (formerly Hood) ("Ms. Miller"), who was the Vice President of Human Resources and employed by FAS, have refused to

6

acknowledge that Plaintiff was actually terminated and instead assert that he resigned his position.  See id., exhibits F and R.

## Legal Standard

Summary judgment may be granted only when "there is no genuine issue as to any material fact and . . . the moving party is entitled to judgment as a matter of law."  FED. R. CIV. P. 56(c).  Summary judgment is appropriate "only where 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.'" Fuerschbach v. Southwest Airlines Co., 439 F.3d 1197, 1207 (10th Cir. 2006) (quoting Rule 56(c)).  When applying this standard, the court examines the record and makes all reasonable inferences in the light most favorable to the non-moving party.  See Muñoz v. St. Mary-Corwin Hosp., 221 F.3d 1160, 1164 (10th Cir. 2000).

The movant bears the initial burden of demonstrating the absence of a genuine issue of material fact and entitlement to judgment as a matter of law.  See Trainor v. Apollo Metal Specialties, Inc., 318 F.3d 976, 979 (10th Cir. 2002); Adler v. Wal-Mart Stores, Inc., 144 F.3d 664, 671 (10th Cir. 1998).  If this burden is met, the nonmovant cannot rest on the pleadings, but must set forth specific facts by reference to affidavits, deposition transcripts, or other exhibits to support the claim.  See Serna v. Colo. Dep't of Corr., 455 F.3d 1146, 1151 (10th Cir. 2006) (citing Behrens v. Pelletier, 516 U.S. 299, 309 (1996)).

The nonmovant's burden is more than a simple showing of "some metaphysical doubt as to the material facts."  Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).  Evidence relied upon in opposition to summary judgment "may be insufficient to create a triable fact if it is non-specific or otherwise non-responsive, vague, conclusory, or self-

serving." Piercy v. Maketa, 480 F.3d 1192, 1197-98 (10th Cir. 2007). The nonmovant's "evidence, including testimony, must be based on more than mere speculation, conjecture, or surmise." Bones v. Honeywell Int'l, Inc., 366 F.3d 869, 875 (10th Cir. 2004).

**Analysis**

Plaintiff alleges that all Defendants function as a "single employer." Summary judgment is appropriate if Defendants FLTCH, THI Baltimore, THI New Mexico, FAS, and FCC demonstrate there is "no genuine issue as to any material fact" and they are "entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c). An issue is "genuine" if "there is sufficient evidence on each side so that a rational trier of fact could resolve the issue either way." Thom v. Bristol-Myers Squibb Co., 353 F.3d 848, 851 (10th Cir. 2003) (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)). A fact is "material" if, under the applicable substantive law, it is "essential to the proper disposition of the claim." Id. (citing Anderson, 477 U.S. at 248).

Under the single-employer test, a Plaintiff who is the employee of one entity may seek to hold another entity liable by arguing that the two entities effectively constitute a single employer. See Bristol v. Board of County Commr's of the County of Clear Creek, 312 F.3d 1213, 1218 (10th Cir. 2002). The single-employer test is sometimes confused with, but is distinct from, the joint-employer test. Id. Under the joint-employer test, a Plaintiff who is the employee of one entity may seek to hold another entity liable by claiming that the two entities are joint employers. Id. The joint-employer test acknowledges that the two entities are separate, but looks to whether they co-determine the essential terms and conditions of employment. Id. The single-employer test, however, asks whether two nominally separate entities should in fact be treated as an integrated enterprise in contrast with the joint-employer test, which assumes that

the alleged employers are separate entities. Id. Moreover, while the single-employer test "looks at the overall relationships of the . . . entities, not just the entities' relationship to a given employee or class of employees." Sandoval v. City of Boulder, Colorado, 388 F.3d 1312, 1324 (10th Cir. 2004).

The Tenth Circuit weighs four factors in considering "whether two nominally separate entities constitute an integrated enterprise or single employer: (1) interrelations of operations; (2) common management; (3) centralized control of labor relations; and (4) common ownership and financial control." Id. at 1322. While the Circuit has stated that it considers the third factor to be the most important, it has also stated that the "heart of the inquiry" concerning single-employer status "is whether there is an absence of an arm's length relationship among the companies." See id.; Knowlton v. Teltrust Phones, Inc., 189 F.3d 1177, 1184 (10th Cir. 1999). "The ultimate determination of single employer status depends upon all the circumstances of the case." NLRB v. Carson Cable TV, 795 F.2d 879, 882 (9th Cir. 1986).

    A.    **FLTCH**

Construing the facts in a light most favorable to Mr. Prendergast, the Court finds Plaintiff has produced evidence of the following:

(1) FLTCH is owned solely by Mr. Foreman and Mr. Grunstein and Mr. Foreman and Mr. Grunstein are the only officers and directors;

(2) FLTCH's address is 930 Ridgebrook Road, Sparks, Maryland, the same address as THI Baltimore;

(3) For federal tax purposes, FLTCH has elected to treat Valle Norte (and its similar facilities) as a "disregarded entity" and the owners of FLTCH pay the taxes for the profits received by Valle Norte, which are reported on the tax return that FLTCH files (there are filing that are made at the shareholder level to reflect those results);

(4) The FAS tax department prepares the tax filings for FLTCH;

  (5)  Christine Zack ("Ms. Zack") an in-house attorney, holds the position of Senior Vice President for FAS, and though she has no direct supervisor, she presumes her employment is controlled by FLTCH shareholder Mr. Foreman;

  (6)  Ms. Zack testified as the corporate representative for each defendant and she provides updates regarding operations and legal matters at the facility-level to FLTCH shareholder Mr. Foreman several times a month;

  (7)  There is one Directors' and Officers' ("D&O") insurance policy, held in the name of FLTCH, that covers all the facilities and named Defendants; and

  (8)  Teresa Crocker ("Ms. Crocker"), who was employed in the human resources department at Valle Norte, was told by "Fundamental" what company name to use, what letterhead to use for new hires, and how to input employment information into their system.

See docket no. 178, exhibits B, C, and D.

  **B.**  **THI Baltimore**

Construing the facts in a light most favorable to Mr. Prendergast, the Court finds Plaintiff has produced evidence of the following:

  (1)  THI Baltimore was acquired by FLTCH in March 2006 and after the acquisition, it created Defendants FAS and FCC to do the work that THI of Baltimore Management, LLC, (now defunct), had been doing;

  (2)  Employees of THI of Baltimore Management, LLC became employees of FAS or FCC depending upon their duties;

  (3)  The officers and directors THI Baltimore are Mr. Tabler, Mr. Bennett, and Mr. Fulchino, who were also the directors of Valle Norte from January to July 2006;

  (4)  THI Baltimore's address is 930 Ridgebrook Road, Sparks, Maryland, the same address as FLTCH;

  (5)  For federal tax purposes, THI Baltimore has elected to treat Valle Norte as a "disregarded entity;"

  (6)  Ms. Zack testified as the corporate representative for each defendant and she provides updates regarding operations and legal matters at the facility-level to FLTCH shareholder Mr. Foreman several times a month;

 (7) There is one D&O insurance policy, held in the name of FLTCH, that covers all the facilities and named Defendants, including THI Baltimore;

 (8) The professional and general liability ("PLGL") insurance policy that applies to the facilities is written in the name of FCC and THI Baltimore is also covered by the policy; and

 (9) The FAS tax department prepares the tax filings for THI Baltimore.

See id., exhibits B, D, and E.

  **C.** **THI New Mexico**

Construing the facts in a light most favorable to Mr. Prendergast, the Court finds Plaintiff has produced evidence of the following:

 (1) Valle Norte is purportedly managed by a "governing body" consisting of the facility administrator, the Director of Nursing ("DON") and the Regional Director of Operations ("RDO") and the only officer of Defendant THI New Mexico is the current RDO, Mr. Andujo;

 (2) Mr. Andujo did not know the purpose of THI New Mexico, whether it had any financial statements, or whether it had any officers;

 (3) RDOs, including Mr. Andujo, are also employed by Defendant FCC;

 (4) For federal tax purposes, THI New Mexico has elected to treat Valle Norte as a "disregarded entity;"

 (5) The FAS tax department prepares the tax filings for THI New Mexico;

 (6) There is one D&O insurance policy, held in the name of FLTCH, that covers all the facilities and named Defendants;

 (7) Dona Felton, the Valle Norte administrator from October 2006 to May 2007, reported to the RDO of Valle Norte and sole officer of THI New Mexico, Mr. Andujo;

 (8) Mr. Andujo also supervised some marketing employees, but did not know if they worked for FCC or FAS;

 (9) All "Fundamental" nursing home facilities had the same handbook, the same policies, the same employee benefits, the same 401(k) plan, the same internet provider and the same protocol for conducting background checks on employees;

    (10)    Ms. Zack testified as the corporate representative for each defendant and she provides updates regarding operations and legal matters at the facility-level to FLTCH shareholder Mr. Foreman several times a month;

    (11)    THI New Mexico's sole officer, Mr. Andujo, reported to FCC officer and director Mr. Hillegass in Texas; and

    (12)    THI New Mexico's sole officer's physical office is located in the Valle Norte facility.

See id., exhibits A, B, C, D, E, G, and H.

### D.    FAS

Construing the facts in a light most favorable to Mr. Prendergast, the Court finds Plaintiff has produced evidence of the following:

    (1)    The directors of Valle Norte from January to July 2006 were Mr. Bradley, who is also the CEO of FAS, and Mr. Fulchino, who is the CFO of FAS, a former officer and director at Valle Norte, and a current officer and director with THI Baltimore;

    (2)    After FLTCH acquired THI Baltimore in March 2006, it created Defendants FAS and FCC to do the work of THI Management, LLC (now defunct);

    (3)    FAS has the same directors, officers, and address that THI Baltimore Management, LLC used to have;

    (4)    The FAS and FCC contracts are materially the same for every one of approximately 100 facilities, including Valle Norte;

    (5)    The FAS management fee is 4% of net operating revenue for Valle Norte and all other "Fundamental" facilities;

    (6)    FCC also has a contract for services with FAS;

    (7)    FAS and FCC provided all the services listed in Exhibit A of the contract with Valle Norte and there is no consequence if the fee does not cover the operating expenses;

    (8)    FAS has never cancelled a contract or stopped providing services because a facility was in the negative;

    (9)    The lack of payment is recorded as a "receivable" on FAS's books and a payable on the facility's books, and the balance just grows if the facility does not perform

better;

(10) Valle Norte's revenues go to a "lock box," along with the revenues for every "Fundamental" facility and the funds in the "lock box" are applied to a line of credit that FAS has;

(11) FAS pays the vendors, rent, and all operating expenses for the facilities, including Valle Norte;

(12) Ms. Zack holds the position of Senior Vice President for FAS, and though she has no direct supervisor, she presumes her employment is controlled by FLTCH shareholder, Mr. Foreman;

(13) Mr. Tabler, the Vice President of Finance for FAS, reports to Mr. Fulchino, who is the CFO for FAS, an officer and director with THI Baltimore, and a former director at Valle Norte;

(14) Ms. Miller, the Vice President of Human Resources employed by FAS, was the primary contact for Valle Norte, other facilities and FCC regarding human resources issues, such as handbook policies, employee complaints, employee discipline, and benefits;

(15) Ms. Miller verified the interrogatory answers for each of the Defendants in this case;

(16) Ms. Felton, whose signature is on the FAS and FCC contracts, had not heard of FAS or FCC and did not know the relationship between any of the Defendants and Valle Norte;

(17) Mr. Andujo advised facilities about how to be profitable and oversaw their budgets, but he did not know to whom the management fee was paid, how it was calculated, what is was based upon, or if a facility could do anything to reduce it;

(18) Employees are wrong "all the time" about who they are employed by and by whom their coworkers are employed;

(19) FAS employee Ms. Miller is a decision-maker on terminations at facilities, and Mr. Andujo confirmed that Ms. Miller would have authority to discipline director-level employees, such as Plaintiff;

(20) FAS provides a website and recruiting and marketing services to facilities and the site simply says "Fundamental" because different entities recruit for jobs on the web page;

(21) Positions at the facility level, including at Valle Norte, are posted on the website

              of FAS, but FCC also uses the same website to look for applicants;

(22)    FAS employee Ms. Miller visited Valle Norte to audit whether Ms. Crocker was "doing her work correctly," and audited things like employees' files, payroll issues like vacation, and whether people clocked in and out correctly;

(23)    Ms. Crocker's only responsibility regarding processing employee terminations was to send a termination form to corporate and they took care of all the details, such as discontinuing benefits and 401(k) contributions;

(24)    As the administrators' supervisor, THI New Mexico's only employee, Mr. Andujo did their performance evaluations, determined whether or not they should be hired or fired, determined their pay increases, oversaw their work performance, and set goals and objectives for them – Mr. Andujo is employed by FCC and his supervisor is FCC officer and director Mr. Hillegass;

(25)    Mr. Andujo told Ms. Felton that only she and he had authority to terminate Mr. Prendergast's employment;

(26)    Calls to the employee hotline from Valle Norte were received by the compliance department at FAS and employee complaints about a supervisor through the hotline were investigated by Mr. Andujo, who reviewed his findings with Ms. Miller from FAS and sometimes Mr. Hillegass from FCC; and

(27)    Employees worked for both Valle Norte and Albuquerque Care Center at the same time as Mr. Andujo and Mr. Dosher pulled people, including maintenance, from different facilities to help in other locations if extra help was needed.

See id., exhibits B, C, D, E, F, G, H, and K.

    **E.**    **FCC**

Construing the facts in a light most favorable to Mr. Prendergast, the Court finds Plaintiff has produced evidence of the following:

(1)    FCC's address is in Texas and its officers are Mr. Hillegass and Ms. McDonald;

(2)    Mr. Andujo, THI New Mexico's sole officer, reports to Mr. Hillegass at FCC;

(3)    The FCC contracts are materially the same for every one of approximately 100 facilities, including Valle Norte;

(4)    The FCC management fee is 1% and FCC also has a contract for services with FAS;

(5)   Mr. Dosher was employed by FCC as the Divisional Construction and Maintenance Director from September 2003 to 2008 and he was responsible for overseeing maintenance operations and maintenance directors at 42 facilities in eight states;

(6)   Mr. Dosher had never heard of any Fundamental companies besides FCC;

(7)   Mr. Andujo, THI New Mexico's sole officer, was not sure if he and Ms. Miller from FAS worked for the same company, but he knew she also worked for "Fundamental;"

(8)   Mr. Roby, with FCC, believed he and Ms. Miller, with FAS, worked for the same company;

(9)   Mr. Hillegass with FCC offered Ms. Felton her Facility Administrator job at Valle Norte;

(10)  It was part of Mr. Dosher's job to inform the Facility Administrator and the RDO if a maintenance man was not performing appropriately;

(11)  Mr. Roby, with FCC, evaluated Plaintiff's job performance and prepared a performance evaluation (the only one in Plaintiff's file);

(12)  When Mr. Roby received a raise, he was informed about it by Ms. Miller with FAS;

(13)  There is an electronic purchasing hub for all facilities that they can log on to purchase their food and equipment;

(14)  All facilities, including Valle Norte, have the same policies and procedures regarding the way residents are handled;

(15)  Each geographic region has a budget, prepared by Mr. Hillegass, the RDOs, and an FAS accountant;

(16)  The money is maintained by FAS until it is needed;

(17)  A capital expenditure is anything $500 or more with a lifetime of 12 months or longer and administrators could not make any capital expenditures without going through Mr. Andujo;

(18)  Mr. Andujo had to forward expenditures to Mr. Dosher and Mr. Hillegass for approval and the money then had to be "released" by Lynn Weir with FAS;

(19)  Mr. Dosher made decisions on facility repairs, wrote reports of his facility visits,

        and provided training to new maintenance employees regarding policies and procedures, including the requirement that they call him if they wished to spend over $500;

(20)    Mr. Andujo was eligible for a bonus which was based on the financial performance, turnover rates, and clinical outcomes of the accumulated performance of all of the facilities that he oversaw;

(21)    Marketing for the facilities was handled by an employee at the division level who reported to Mr. Hillegass, a regional marketing employee, and a business development individual who reported to Mr. Andujo.

See id., exhibits B, C, D, E, F, G, H, I, and J.

### F.    Single Employer Status

In weighing the four factors the Court is to consider when evaluating whether the nominally separate entities in this case constitute an integrated enterprise or single employer, the Court finds that given the amount and weight of evidence submitted by Plaintiff with respect to the interrelations of operations, common management, centralized control of labor relations, and common ownership and financial control, there is a genuine issue of material fact as to the "single employer" status of Valle Norte, FLTCH, THI Baltimore, THI New Mexico, FAS, and FCC.  See Fed. R. Civ. P. 56(c) (addressing the factors in Sandoval, 388 F.3d at 1322).  Even a cursory review of the record and evidence in this case indicates interrelations between the operations and common management of the different entities, as FAS and FCC are involved with control of labor relations and have some degree of financial control over all the other entities, and Mr. Andujo, Mr. Dosher, Mr. Hillegass, Mr. Tabler, Mr. Bennett, Mr. Fulchino and Ms. Miller appear to work for the interests of multiple entities.

The Court acknowledges the arguments and evidence submitted by Defendants to suggest "single employer" status does not apply, but ultimately the Court finds there is a "genuine" issue because there is sufficient evidence on each side so that a rational trier of fact could resolve the

issue either way. See Thom, 353 F.3d at 851.  There is one D&O policy covering all the facilities and named Defendants; Ms. Zack has testified as the corporate representative of all of the named Defendants and presumes she is supervised by Mr. Foreman with FLTCH; Ms. Miller verified interrogatory answers for all of the named Defendants; FLTCH and THI Baltimore share the same address; THI Baltimore, after being acquired by FLTCH, created FCC and FAS; and Mr. Andujo, whose office is physically at the Valle Norte facility, is currently the only officer of THI New Mexico and the current RDO for Valle Norte, but is an employee of FCC and reports to Mr. Hillegass in Texas.

Because the Court finds there is a genuine issue of material fact as to whether there is an absence of an arm's length relationship amongst the named Defendants, the undersigned will not address all of the other strong evidence presented by Plaintiff suggesting Valle Norte, FLTCH, THI Baltimore, THI New Mexico, FAS, and FCC operate as an integrated enterprise.  See Knowlton, 189 F.3d at 1184.  Defendants' Motion for Summary Judgment Regarding Single Employer Status will thus be denied.

**WHEREFORE,**

**IT IS HEREBY ORDERED** that Defendants' Motion for Summary Judgment Re: Single Employer Status (docket no. 166) is **DENIED**.

**SO ORDERED** on this 13th day of August, 2009.

_____
UNITED STATES MAGISTRATE JUDGE