## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW MEXICO

MICHAEL PRENDERGAST,

           Plaintiff,

vs.                                                                                    CIV 07-1265 CG/LFG

FUNDAMENTAL LONG TERM
CARE HOLDINGS, LLC, et al.,

           Defendants.

### <u>MEMORANDUM OPINION AND ORDER</u>

This matter comes before the Court upon "Defendant THI of New Mexico at Valle Norte,

LLC's Motion for Summary Judgment" and Memorandum Brief in support thereof (docket nos.

168, 169), filed May 8, 2009, Plaintiff's Response, and Defendant's Reply (docket nos. 177 and

184); "Plaintiff's Motion for Summary Judgment on Defendants' Affirmative Defense of After-

Acquired Evidence" and Memorandum in support thereof (docket nos. 174, 175), filed May 22,

2009, Defendant's Response, and Plaintiff's Reply (docket nos. 179 and 188); "Defendant Valle

Norte's Motion to Strike Plaintiff's Summary Judgment Evidence" (docket no. 185), filed June

15, 2009, Plaintiff's Response, and Defendant's Reply (docket nos. 192 and 197, exhibit A);

"Plaintiff's Motion to Strike the Affidavit of Jaime Luis Andujo and for Sanctions" (docket no.

189), filed June 25, 2009, Defendant's Response, and Plaintiff's Reply (docket nos. 194 and

200).  For the reasons below, this Court finds all four motions should be denied.

### Procedural Background

On December 17, 2007, Michael Prendergast ("Mr. Prendergast" or "Plaintiff") filed his

"Complaint for Damages for Violation of Fair Labor Standards Act, Retaliatory Discharge and

Personal Injury."  Docket no. 1 ("Plaintiff's Original Complaint").  Plaintiff's Original

Complaint names as Defendants Valle Norte, Fundamental Long Term Care Holdings, LLC d/b/a GTCR Fund VI, LP ("FLTCH"), THI of Baltimore, Inc. ("THI Baltimore"), THI of New Mexico, LLC ("THI New Mexico"), Fundamental Long Term Care Interim Management, LLC, and THI Holdings, LLC.  Id.  On February 20, 2009, Mr. Prendergast filed his "First Amended Complaint for Damages for Violation of Fair Labor Standards Act and Retaliatory Discharge."[1] Docket no. 132 ("Plaintiff's First Amended Complaint").  Plaintiff's First Amended Complaint does not name Fundamental Long Term Care Interim Management, LLC or THI Holdings, LLC as Defendants, but adds Fundamental Administrative Services, LLC ("FAS") and Fundamental Clinical Consulting, LLC ("FCC").  Id.  Thus, the six named Defendants in Plaintiff's First Amended Complaint are: Valle Norte, FLTCH, THI Baltimore, THI New Mexico, FAS, and FCC.  Id.  All of the parties have consented to the undersigned pursuant to 28 U.S.C. § 636(c). See docket nos. 3, 9, 28 and 193.

Plaintiff's First Amended Complaint alleges the case arises under the Fair Labor Standards Act, 29 U.S.C. § 209, et seq. ("FLSA"), and New Mexico common law.  See docket no. 132 at 1.  Count I of Plaintiff's Amended Complaint alleges a violation of the FLSA and Count II alleges Defendants engaged in a retaliatory discharge in violation of New Mexico state law.  See id. at 11-12.

Plaintiff's FLSA claim first states that Plaintiff initially received an hourly wage of $17.00 an hour, which was later increased to $21.00, and though his average work week consisted of about 50-55 per week, it was not uncommon for Plaintiff to work between 60 and 70

---

[1]  Mr. Prendergast filed a motion to amend his complaint on January 2, 2009, and the motion was granted on February 19, 2009, leading to the filing of the amended complaint on February 20, 2009.  See docket nos. 84 and 127.

hours per week.  See Plaintiff's First Amended Complaint at 11.  Plaintiff contends Defendants warned him about working overtime and, because of these warnings, Plaintiff often did not "punch in," particularly when he had to return to the facility to make repairs during nights, weekends, or holidays.  Id.  Plaintiff alleges that despite the failure to use his time card, those in management, including Lanny Dosher ("Mr. Dosher") of FCC and Jaime Andujo ("Mr. Andujo") of THI New Mexico, knew or had reason to know that Plaintiff was working off the clock and accumulating more hours and overtime than he was receiving payment for, but "acquiesced in the unpaid wages."  Id.  Plaintiff alleges he was entitled to, but did not receive, straight time and/or overtime pay for hours worked between August 2006 and May 2007.  Id.  According to Plaintiff, Defendants' failure to compensate him for hours and overtime worked was willful, and therefore, he is entitled to recover liquidated damages under the FLSA.  Id.

Plaintiff's retaliatory discharge claim alleges that while employed by Defendants at Valle Norte, Plaintiff engaged in conduct encouraged by public policy, specifically 42 C.F.R. Part 483, Subpart B, related to long-term facilities, the Public Health Act, NMSA §§ 24-1-1 to 24-1-31 (2007), and NMAC § 7.9.2 (2007), setting forth health and safety requirements for long term care facilities in New Mexico.  Id. at 12.  Plaintiff claims his conduct included attempting to protect the health and safety of nursing home residents and staff by advising nursing home management "at the local and corporate levels" about unsafe conditions within the facility and by encouraging administration officials to remedy the poor conditions.  Id.  Plaintiff states he further engaged in protected activity in reporting the conditions to State Health inspectors.  Id.  Defendant alleges he was fired because of his protected activity and has sustained damages as a

result of the termination,[2] including lost wages and benefits and emotional distress.  Id.

On March 9, 2009, Defendants Valle Norte, FLTCH, THI Baltimore, THI New Mexico, FAS, and FCC filed their Answer to Plaintiff's First Amended Complaint.  See docket no. 137 ("Defendants' Answer").  Defendants' Answer essentially denies all of the substantive allegations in Plaintiff's First Amended Complaint.  See id.  Additionally, Defendants' Answer raises eight affirmative defenses, including "that any and all actions they took with respect to Plaintiff were justified by after-acquired evidence and that Plaintiff's recovery is limited and/or barred by after-acquired evidence."  Id. at 12.

On May 8, 2009, Defendant Valle Norte filed its "Motion for Summary Judgment," and Memorandum Brief in support thereof.  See docket nos. 168 and 169.  The motion argues that because no genuine issue of material fact exists as to either of the two claims in Plaintiff's First Amended Complaint, judgment in favor of Valle Norte should be granted.  Id.  Additionally, Valle Norte argues that should the Court find summary judgment is not proper on either of those claims, any damages Plaintiff may recover are limited due to (1) after-acquired evidence of Plaintiff's misconduct, and (2) his failure to mitigate his alleged damages.  Id.  On May 28, 2009, Plaintiff filed a response in opposition to Valle Norte's Motion for Summary Judgment, arguing that there are disputed issues of fact precluding summary judgment in favor of Valle Norte.  See docket no. 177.  Plaintiff's response is accompanied by an affidavit from Mr. Prendergast, sworn to on May 27, 2009.  See id., exhibit M.  On June 15, 2009, Valle Norte filed

---

[2] Plaintiff's First Amended Complaint, with respect to damages, states that Plaintiff seeks: damages for economic losses he has suffered, including monetary damages in the form of lost wages and benefits; damages for past and future mental anguish and emotional distress; liquidated damages pursuant to the FLSA; punitive damages pursuant to New Mexico common law; pre- and post-judgment interest; and "reasonable attorneys' fees and costs as allowed pursuant to the FLSA."  Id. at 12-13.

a reply to Plaintiff's response, claiming "Plaintiff's evidence submitted with his Response falls significantly short of establishing a genuine issue of material fact with respect to each of Plaintiff's claims."  Docket no. 184 at 1.

On May 22, 2009, Plaintiff filed his "Motion for Summary Judgment on Defendants' Affirmative Defense of After-Acquired Evidence, and Memorandum in support thereof.  See docket nos. 174 and 175.  The memorandum brief argues that because no genuine issue of material fact exists as to this defense and because Defendants cannot meet their burden of proof, summary judgment in favor of Mr. Prendergast should be granted.  See docket no. 175.  On June 8, 2009, Valle Norte filed a response in opposition to Plaintiff's motion, stating it requests "that the Court deny Plaintiff's Motion for Summary Judgment and enter summary judgment in their favor."  Docket no. 179.  On June 25, 2009, Plaintiff filed a reply to Defendant's response.  See docket no. 188.

On June 15, 2009, Valle Norte filed a "Motion to Strike Plaintiff's Summary Judgment Evidence."  See docket no. 185.  Valle Norte's motion argues that two paragraphs of Mr. Prendergast's Affidavit in support of Plaintiff's response to Valle Norte's Motion for Summary Judgment should be stricken due to inconsistencies with Mr. Prendergast's deposition testimony. See id. (referencing docket no. 177, exhibit M).  On June 30, 2009, Plaintiff filed a response to the Defendants' Motion to Strike, wherein Plaintiff argues, among other things, that "an affidavit may not be disregarded simply because it conflicts with the affiant's prior sworn statements." Docket no. 192 at 1-2.  On July 14, 2009, Valle Norte filed a reply to Plaintiff's response.  See docket no. 197, exhibit A.

On June 25, 2009, Plaintiff filed a "Motion to Strike the Affidavit of Jaime Luis Andujo

and for Sanctions." See docket no. 189.  Plaintiff argues the affidavit should be stricken because

Valle Norte did not comply with Federal Rule of Civil Procedure 26.  See id.  On July 7, 2009,

Valle Norte filed its response, asserting Mr. Andujo's declaration complies with the

requirements set forth in Federal Rule of Civil Procedure 56(e) and should be considered by the

Court.  Docket no. 194.  On July 24, 2009, Plaintiff filed a reply to Defendants' response.  See

docket no. 200.

## Factual Background

The following facts, unless otherwise indicated, are undisputed.  For purposes of the

Motion for Summary Judgment filed by Defendant Valle Norte, all reasonable factual inferences

are viewed in the light most favorable to Mr. Prendergast.  See Atlantic Richfield Co. v. Farm

Credit Bank of Wichita, 226 F.3d 1138, 1148 (10th Cir. 2000).  For purposes of the Motion for

Summary Judgment filed by Mr. Prendergast, all reasonable factual inferences are viewed in the

light most favorable to Valle Norte.  See id.

On or about August 30, 2006, Mr. Prendergast was hired as maintenance director at the

Valle Norte Caring Center in Albuquerque, New Mexico.  See docket no. 169, exhibit 1.

Plaintiff was employed in his position until May 24, 2007, and during his employment, he

reported to Valle Norte's Facility Administrator.  See Plaintiff's First Amended Complaint at 3-

4; Defendants' Answer at 4.  Plaintiff's first Administrator, Joe Vega ("Mr. Vega"), left Valle

Norte right after Plaintiff was hired.  See docket no. 177 at 2.  After Mr. Vega left, Brian Roby

("Mr. Roby") was employed as the temporary or interim Facility Administrator, thus making

him Plaintiff's supervisor.  See Plaintiff's First Amended Complaint at 4; Defendants' Answer at

4.  Shortly before Mr. Roby left the facility, he completed a performance evaluation of Mr.

Prendergast, noting that Plaintiff was "extremely knowledgeable" and "a tremendous asset to Valle Norte Caring Center."  Docket no. 177, exhibit D.  On October 10, 2006, Dona Felton ("Ms. Felton") was hired as the Facility Administrator at Valle Norte and held the position until May 10, 2007.  See Plaintiff's First Amended Complaint at 4; Defendants' Answer at 4.  On November 13, 2006, Plaintiff received a pay raise from $17.00 an hour to $21.00 an hour.  See Plaintiff's First Amended Complaint at 4; Defendants' Answer at 5.  Jaime Andujo ("Mr. Andujo"), the Regional Director of Operations at Valle Norte and sole officer of THI New Mexico who was also Ms. Felton's direct supervisor, approved Mr. Prendergast's November 2006 pay raise.  See docket no. 177, exhibits E and K.

When Mr. Prendergast applied for employment at the Valle Norte facility, he submitted an application and résumé.  See docket no. 169, exhibit 1.  On the résumé, Plaintiff indicated that he had a high school diploma and that he was "Certified: Electrician, Plumber, HVAC," when in fact he did not have a high school diploma and did not hold any such certifications.  Id. Additionally, Mr. Prendergast did not disclose that he had an old criminal conviction for failure to pay child support when asked on the application whether he had been convicted of a crime and he also made errors on his résumé as to the exact dates of employment at certain previously held jobs.  Id.

Ms. Felton, Mr. Prendergast's direct supervisor from October 2006 to May 2007, has sworn to the fact that the "building occupied by the residents at Valle Norte was in very poor condition," posing "a significant risk to the safety, comfort and well-being of the residents." Docket no. 177, exhibit K.  Further, Plaintiff has maintained that during his employment, the Valle Norte nursing home was in a state of significant disrepair, specifically: residents were

7

regularly without heating and cooling; the fire safety and emergency generator systems were out of code and did not function; the plumbing system was inadequate, leading to the growth of mold and mildew throughout the facility and sewage backup in the kitchen, dining room, bathroom, laundry room, and resident rooms; there were times during which sewage and fecal material had backed up into the kitchen area when food was being prepared; and the building lacked an operational ventilation system as the majority of windows in the facility could not be opened, leading to a foul odor throughout the facility.  See Plaintiff's First Amended Complaint at 5.  Although Defendants have denied these claims, Plaintiff further alleges that FLTCH, FAS and/or FCC and Valle Norte management instructed employees to hide problems in the facility from the residents, residents' families, and State and County inspection teams.  See id. Following annual inspections of the Valle Norte facility by the State of New Mexico Department of Health in 2005, 2006, 2007, and 2008, the facility failed to achieve substantial compliance with necessary health and safety regulations.  See docket no. 177, exhibit H.

Mr. Prendergast, in his role as Director of Maintenance and Plant Operations, sometimes had difficulty obtaining bids for maintenance and repair work because Valle Norte had a poor record of paying vendors.  Id..  exhibit F.  Occasionally, vendors threatened to place a lien on the Valle Norte property due to non-payment.  Id., exhibits E and J.  Valle Norte and its affiliates were required to follow a "three-bid rule," requiring the facility to obtain bids from three sources before hiring any outside contractor.  See id., exhibits A and G.  Given the difficulty Valle Norte had in obtaining bids, Mr. Prendergast often requested, and was granted by Ms. Felton, permission to complete various tasks himself so that residents would not be without heat, light, or hot water.  Id., exhibit K.

During Plaintiff's employment, Mr. Dosher was the Divisional Construction Maintenance Director for 42 facilities, including Valle Norte.  Id., exhibit G.  Mr. Dosher, though technically employed by FCC, was responsible for overseeing facility construction projects, for approving funds for facility capital expenditures, and for making final decisions as to cost effectiveness.  Id.  Mr. Dosher also determined whether capital monies would be spent and frequently refused to pay for necessary replacements of facility equipment.  Id.  Rather, he insisted that older equipment continue to be repaired, even when it broke down frequently.  Id.  Mr. Dosher made clear to Ms. Felton that he disliked Plaintiff's numerous complaints about the physical state of the facility and his efforts to remedy the problems he encountered, referring to Mr. Prendergast as a "loose cannon."  Id., exhibit E and K.  During his employment, Plaintiff was frequently called to Valle Norte at night, on weekends, and other times outside of regular business hours to work on problems with the heating, cooling, hot water, and fire alarm systems, essentially placing him "on call" at all times.  See id., exhibits A and F.

Plaintiff recalls that he worked on several occasions at Valle Norte for which he was not compensated, including October 7, 2006, and November 22 and 23, 2006.  See docket no. 177, exhibit M.  Plaintiff also claims to have filled out overtime forms on a number of occasions when he had come in after hours and had not used his time card.  See id., exhibits A and E.  Upon receiving his paychecks, Plaintiff noticed he had not been reimbursed for all of his time and even though he raised the issue with Teresa Crocker ("Ms. Crocker") in the human resources department at Valle Norte and Ms. Felton, it was never resolved.  See id., exhibit A.  Plaintiff estimates he worked between 50 and 55 hours in an average week.  See id.  He was actually compensated for approximately 42.5 hours per week, on average.  See docket no. 169, exhibit

15.

In March 2007, Plaintiff began to remodel several resident shower rooms at Valle Norte at the instruction of Mr. Andujo.  <u>See</u> docket no. 177, exhibit E.  Mr. Prendergast started the project, but, after taking up the shower room floor, observed water damage as well as a black mold-like substance and a noxious odor became present in the room.  <u>See</u> <u>id.</u>, exhibit A. Plaintiff immediately informed Ms. Felton of the situation and the two telephoned Mr. Dosher to inform him of the situation.  <u>See</u> <u>id.</u>, exhibit G.  Mr. Dosher interrupted Ms. Felton and instructed her to close and lock her office door.  <u>See</u> <u>id.</u>, exhibit K.  Mr. Dosher then allegedly told Ms. Felton and Plaintiff that no one was to be told about the findings, particularly not the residents or their families, and he ordered Mr. Prendergast to return to the shower room job.  <u>See</u> <u>id.</u>, exhibits A and K.  Plaintiff explained that he did not feel qualified to handle the mold-like substance that was present, and informed Mr. Dosher that he felt an abatement team should be called in to address the situation.  <u>See</u> <u>id.</u>, exhibit A.  Mr. Dosher, however, refused the suggestion of an abatement team and stated "I don't care.  Mike you go fix it."  <u>See</u> <u>id.</u>  Ms. Felton then informed her supervisor, Mr. Andujo, of the mold and Mr. Andujo also ordered Ms. Felton to inform Plaintiff that he should continue working in the shower room.  <u>See</u> <u>id.</u>, exhibit E.  Mr. Prendergast complied with Mr. Dosher and Mr. Andujo's instruction, but was provided with no respirator or other protective equipment.  <u>See</u> <u>id.</u>, exhibits A and N.

The smell in the shower room was terrible as Ms. Felton indicates she could not remain in the room without feeling physically ill.  <u>See</u> <u>id.</u>, exhibit E.  Plaintiff also had to leave frequently because of the smell.  <u>See</u> <u>id.</u>, exhibit A.  Valle Norte's Assistant Director of Nursing, Jennifer Pallulot ("Ms. Pallulot"), told Ms. Felton that numerous employees, particularly the

certified nursing assistants, were either calling in sick or becoming nauseous at work due to the smell emanating from the shower room.  See id., exhibit E.  After working in the shower room for several weeks, Plaintiff began to feel sick.  See id., exhibit A.  Mr. Prendergast experienced frequent fevers and chills in addition to a skin rash and began to cough up a thick, black sputum.  See id., exhibits A and E.  Plaintiff started working fewer hours after he became ill.  See docket no. 169, exhibit 1, exhibit 15.

In early to mid-April 2007, Ms. Felton became concerned at Plaintiff's apparent declining health and discussed the continuing work in the shower rooms with Mr. Andujo.  See docket no. 177, exhibit K.  Mr. Andujo allegedly responded to Ms. Felton's concern by stating, "He's getting sick?  Well, we'll just replace him."  Id.  Following this conversation, Ms. Felton instructed Mr. Prendergast to stop working in the shower rooms.  See id., exhibit A.  Though Mr. Prendergast eventually discontinued work in the shower room, he continued to feel ill.  See id.

During a 2007 meeting with the Fire Marshal at Valle Norte, the Marshal informed Ms. Felton that his office had cited Valle Norte in each of the previous three annual fire inspections for the poor state of the fire control system.  See id., exhibit E.  The Marshal threatened to arrest Ms. Felton for Valle Norte's continuing violations pursuant to NMSA §§ 59A-52-2, 8, 19 (2008), which gives the Fire Marshal authority to act as peace officer.  See id.  During the same meeting, Plaintiff informed the Fire Marshal that Valle Norte was aware of the system's inadequacy but refused to fix it.  See id., exhibit A.   Ms. Felton, in danger of being arrested for Valle Norte's failure to fix the fire system the previous three years, assured the Fire Marshal that the facility would "go on an emergency fire watch," and all the residents would be checked by facility employees every ten minutes.  Id., exhibit E.  Ms. Felton called Mr. Dosher while the

Fire Marshal was still at Valle Norte and explained the situation.  See id., exhibit K.  Mr. Dosher instructed Ms. Felton to assure the Fire Marshal that Valle Norte would immediately replace the system.  See id.  The Marshal accepted the explanation and assurances that the system would be replaced, leaving the facility without arresting Ms. Felton, but the following day, Mr. Dosher called Ms. Felton to inform her the system would not be replaced.  See id., exhibit E.  Mr. Andujo was aware that Mr. Prendergast was upset about the situation, as the fire alarm system was "always breaking."  Id., exhibit F.

In May 2007, the New Mexico Department of Health came to Valle Norte to complete its annual inspection, during which Mr. Prendergast was observed spending a significant amount of time with the inspectors.  See id., exhibit B.  Shortly after the inspection, and while Ms. Felton was absent for several days in May 2007 on sick leave, she received a call from Mr. Prendergast, who stated when he arrived at work, he was informed by Ms. Crocker in the human resources office at Valle Norte that he no longer had a job.  See id.  Ms. Felton "immediately contacted" Ms. Crocker, who informed her that Mr. Dosher had instructed her to fire Mr. Prendergast.  Id. Ms. Felton eventually discussed the situation with Mr. Andujo, who initially stated "well, you know, Mike [Prendergast] is a loose cannon," before eventually agreeing with Ms. Felton that Mr. Prendergast should retain his job.  Id.

Ms. Felton resigned her position at Valle Norte in May 2007 due to her observations of upper management's lack of concern or attention to the safety and well-being of staff and residents.  See id., exhibit K.  She indicates she "observed significant problems while at Valle Norte," but "was not allowed to sufficiently address these problems due to management's apparent overriding concern with the 'bottom line.'"  Id.  With respect to Plaintiff, Ms. Felton

states that "[o]n a number of occasions, [Mr.] Prendergast would not clock in when he needed to perform work at Valle Norte after business hours due to emergency situations," which was a situation complicated by the fact that Plaintiff "had previously been verbally reprimanded and warned by [Mr.] Andujo about working extra overtime." Id.  After resigning, Ms. Felton reported her concerns about the facility to the State of New Mexico "based on [her] observations of a lack of attention to safety and well-being of residents and staff." Id.  Following Ms. Felton's resignation, Mr. Andujo supervised Plaintiff for the remainder of his employment. See id., exhibit A.

On May 22, 2007, the Department of Health completed its written report based on its inspection of the facility and Valle Norte received the report at 12:30 p.m. on May 24, 2007. See id., exhibit H.  The report revealed that Mr. Prendergast had made comments to the State inspectors such as, "the facility is aware of the problem (with the fire system) and has done nothing about it" and "the fire alarm system . . . is now antiquated and in need of replacement." Id.  Mr. Prendergast was terminated late in the afternoon of May 24, 2007, allegedly as a result of "poor performance." See id., exhibit Q.  Ms. Crocker has indicated that Mr. Prendergast was terminated because of his role in the facility inspection. Id., exhibit B.  Mr. Andujo and Karen Miller (formerly Hood) ("Ms. Miller"), who was the Vice President of Human Resources and employed by FAS, have refused to acknowledge that Plaintiff was actually terminated and instead assert that he resigned his position. Compare id., exhibits F and R with id., exhibit Q.

## Legal Standard

Summary judgment may be granted only when "there is no genuine issue as to any material fact and . . . the moving party is entitled to judgment as a matter of law." FED. R. CIV.

P. 56(c).  Summary judgment is appropriate "only where 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.'" <u>Fuerschbach v. Southwest Airlines Co.</u>, 439 F.3d 1197, 1207 (10th Cir. 2006) (quoting Rule 56(c)).  When applying this standard, the court examines the record and makes all reasonable inferences in the light most favorable to the non-moving party.  <u>See</u> <u>Muñoz v. St. Mary-Corwin Hosp.</u>, 221 F.3d 1160, 1164 (10th Cir. 2000).

The movant bears the initial burden of demonstrating the absence of a genuine issue of material fact and entitlement to judgment as a matter of law.  <u>See</u> <u>Trainor v. Apollo Metal Specialties, Inc.</u>, 318 F.3d 976, 979 (10th Cir. 2002); <u>Adler v. Wal-Mart Stores, Inc.</u>, 144 F.3d 664, 671 (10th Cir. 1998).  If this burden is met, the nonmovant cannot rest on the pleadings, but must set forth specific facts by reference to affidavits, deposition transcripts, or other exhibits to support the claim.  <u>See</u> <u>Serna v. Colo. Dep't of Corr.</u>, 455 F.3d 1146, 1151 (10th Cir. 2006) (citing <u>Behrens v. Pelletier</u>, 516 U.S. 299, 309 (1996)).

The nonmovant's burden is more than a simple showing of "some metaphysical doubt as to the material facts."  <u>Matsushita Elec. Indus. Co. v. Zenith Radio Corp.</u>, 475 U.S. 574, 587 (1986).  Evidence relied upon in opposition to summary judgment "may be insufficient to create a triable fact if it is non-specific or otherwise non-responsive, vague, conclusory, or self-serving."  <u>Piercy v. Maketa</u>, 480 F.3d 1192, 1197-98 (10th Cir. 2007).  The nonmovant's "evidence, including testimony, must be based on more than mere speculation, conjecture, or surmise."  <u>Bones v. Honeywell Int'l, Inc.</u>, 366 F.3d 869, 875 (10th Cir. 2004).

**Analysis**

**1.      Defendant's Motion to Strike and Plaintiff's Motion to Strike and for Sanctions**

The Court will first address the Motions to Strike.  See docket nos. 185 and 189.

Defendant's Motion to Strike contends Plaintiff's affidavit should not be considered by the Court

because parts of his affidavit contradicts his previous deposition testimony and because the

affidavit attempts to "create sham issues" of fact.  See docket no. 185 at 3-5. Plaintiff's Motion

to Strike argues Mr. Andujo's declaration should not be considered by the Court because

Defendants have failed to comply with the disclosure requirements of Federal Rule of Civil

Procedure 26(a) and (e) and that Defendants' failure to comply "is neither harmless nor

substantially justified."  See docket no. 189 at 3-8.

Federal Rule of Civil Procedure 56(e) states that:

> A supporting or opposing affidavit must be made on personal
> knowledge, set out facts that would be admissible in evidence, and
> show that the affiant is competent to testify on the matters stated . .
> . . When a motion for summary judgment is properly made and
> supported, an opposing party may not rely merely on allegations or
> denials in its own pleading; rather, its response must – by affidavits
> or as otherwise provided in this rule – set out specific facts showing
> a genuine issue for trial.

FED. R. CIV. P. 56(e).  Thus, it is incumbent for the nonmoving party to go beyond the pleadings

to designate specific facts showing that there is a genuine issue of material fact for trial.  The

Court finds that the filing of Mr. Prendergast's affidavit by Plaintiff and Mr. Andujo's

declaration by Defendants were both done in furtherance of Rule 56 pleading requirements.

Specifically, with respect to Defendant's motion, the Court finds Mr. Prendergast's affidavit was

made with personal knowledge and is not a "sham affidavit" filed merely to create an issue of

fact.  Similarly, the Court finds, with respect to Plaintiff's motion, that Mr. Andujo was properly

15

disclosed pursuant to Rule 26 as Plaintiff had notice that Mr. Andujo had knowledge regarding Defendants' defense of after-acquired evidence and his declaration should be considered by the Court pursuant to Rule 56.

Despite the parties' objections to the evidence itself, the affidavit and declaration appear to be made upon personal knowledge and they set forth specific, admissible facts that demonstrate affirmatively that both Mr. Prendergast and Mr. Andujo are competent to testify to the matters stated in their sworn statements.  Neither party cites to Tenth Circuit case law affirmatively indicating that sworn statements should be stricken in summary judgment proceedings if they contradict previous deposition testimony or if the affiant was not originally identified in initial disclosures, but made aware to the opposing party during the discovery process.  Thus, both Motions to Strike will be denied and Mr. Prendergast's affidavit and Mr. Andujo's declaration are both considered by the Court in their entirety for purposes of the Motions for Summary Judgment.  The Court, given the above findings on the Motions to Strike, opines that Mr. Prendergast's motion for sanctions is not well-taken and will also be denied.

**2.      Defendant Valle Norte's Motion for Summary Judgment**

Plaintiff's First Amended Complaint contends Defendants violated the FLSA and engaged in a retaliatory discharge.  Valle Norte moves for summary judgment on both claims. Should the Court not grant summary judgment on the FLSA or retaliatory discharge claims, Valle Norte also moves for summary judgment on the question of whether any damages that Plaintiff may be entitled to must be limited due to after-acquired evidence of Plaintiff's alleged misconduct and Mr. Prendergast's alleged failure to mitigate his damages.

A.      FLSA

In first addressing Valle Norte's argument that it is entitled to judgment as a matter of

law on Plaintiff's FLSA claim, the Court notes that the FLSA was enacted in 1938 and regulates

a number of aspects of the employer-employee relationship.  See Solis v. Conley's Nursing &

Landscaping, Inc., Civ. No. 07-829, 2009 WL 1563511 (D.N.M. May 11, 2009).  Among the

FLSA's provisions is a general requirement that employers pay overtime.  See id.  Employers

may not employ workers for a "workweek longer than forty hours unless such employee receives

compensation for his employment in excess of the hours above specified at a rate not less than

one and one-half times the regular rate at which he is employed."  Id. (citing 29 U.S.C. §

207(a)(1)).  Valle Norte claims it is entitled to summary judgment on Plaintiff's FLSA claim

because Plaintiff cannot show that he performed the overtime work for which he claims he was

not properly compensated.  See docket no. 169 at 7-11.

To state an FLSA claim, Mr. Prendergast must show that he worked overtime in an

amount that can be established by "a justifiable and reasonable inference."  McGrath v. Central

Masonry Corp., 276 Fed. Appx. 797, 799 (10th Cir. 2008).  Mr. Prendergast must also

demonstrate that the employer had actual or constructive knowledge of the overtime.  Id.  Ms.

Felton, who was Plaintiff's direct supervisor at Valle Norte from October 2006 to May 2007, has

submitted an affidavit stating "[o]n a number of occasions, [Mr.] Prendergast would not clock in

when he needed to perform work at Valle Norte after business hours due to emergency

situations."  Docket no. 177, exhibit K.  In his own affidavit, Mr. Prendergast alleges "[o]n a

number of occasions [he] did not clock in when [he] came to the facility after hours or during the

weekends because [he] had been informed by Dona Felton that Jaime Andujo, the Regional

17

Director of Operations, did not want maintenance to work overtime." <u>Id.</u>, exhibit M.  Mr.

Prendergast's sworn statement is corroborated by Ms. Felton, who states "Mr. Prendergast had

previously been verbally reprimanded and warned by [Mr.] Andujo about working extra

overtime as were a number of other employees." <u>Id.</u>, exhibit K.

Mr. Prendergast's affidavit indicates that he recalls specific dates in which he worked

overtime, but was not compensated, including: (1) working during the first weekend of the

Albuquerque Balloon Fiesta on Saturday morning (he believes the date was October 7, 2006),

when he was at the facility from approximately 8:00 a.m. until approximately 1:00 p.m.; (2) also

working during the week of the Balloon Fiesta in the evening when the fire alarm went off and

he spent two hours in traffic on the way to the facility and another two hours to shut the alarm

off and re-program it; and (3) working the evening of November 22, 2006, when he was called at

night about a broken water heater pump that he proceeded to attempt to fix for approximately

eight hours.  <u>See</u> <u>id.</u>, exhibit M.

Though Valle Norte denies Plaintiff's assertions, it has produced no evidence indicating

when Plaintiff was called to work at Valle Norte or any of Valle Norte's associated facilities.

Where an employer has not kept adequate records of wages and hours, its employees cannot be

penalized by being denied a recovery of back wages on the ground that the precise extent of their

uncompensated work cannot be proved.  <u>Dole v. Tony and Susan Alamo Foundation</u>, 915 F.2d

349, 351 (8th Cir. 1990) (citing <u>Anderson v. Mt. Clemens Pottery Co.</u>, 328 U.S. 680, 687-88

(1946)).  Thus, it is Valle Norte's responsibility to keep accurate records of when Mr.

Prendergast reported to work, and, in fact, the failure to keep records is in itself a violation of the

record-keeping provisions of the FLSA.  <u>See</u> 29 U.S.C. §§ 211(c), 215(a)(5).  Because Valle

Norte did not keep accurate records of Mr. Prendergast's time or instruct Plaintiff how to do so, the Court finds a reasonable inference may be drawn from Plaintiff's testimony alone concerning his work at these facilities that is sufficient to overcome Valle Norte's Motion for Summary Judgment.  When combined with Ms. Felton's testimony, however, the Court finds there is a genuine issue of material fact as to whether Valle Norte violated the FLSA because the evidence produced by Plaintiff leads the undersigned to find that a rational trier of fact could resolve the issue in Mr. Prendergast's favor.  See Thom, 353 F.3d at 851.

**B.    Retaliatory Discharge**

Plaintiff has alleged he was discharged from his employment with Valle Norte for advising state officials of his employer's actions that violated federal and state health and safety regulations.  The employment-at-will doctrine permits an employer to terminate an employee at will in the absence of an express contract limiting the employer's right to do so.  See Silva v. Am. Fed'n of State, County & Mun. Employees, 37 P.3d 81, 83, 131 N.M. 364, 366 (N.M. 2001).  New Mexico recognizes an exception to the employment-at-will doctrine, which allows an at-will employee who is allegedly discharged for reporting unsafe working conditions to bring a retaliatory discharge claim against his employer.  See id. ¶¶ 10-11; Gutierrez v. Sundancer Indian Jewelry, Inc., 868 P.2d 1266, 1273-75, 117 N.M. 41, 48-50 (N.M. Ct. App. 1993).  Valle Norte asserts it is entitled to summary judgment on Plaintiff's retaliatory discharge claim because the public policy asserted by Mr. Prendergast is insufficient to support a claim for retaliatory discharge under New Mexico law and Mr. Prendergast did not engage in "protected activity" because his normal job duties required him to gather and report safety information and concerns.  See docket no. 169 at 11-18.  Defendant further argues Plaintiff "cannot show a causal

19

connection between his actions and his employment separation."  <u>See</u> <u>id.</u> at 18-20.

With respect to Valle Norte's first argument, that Plaintiff has not asserted a public policy concern sufficient to support a claim for retaliatory discharge under New Mexico law, the Court finds Defendant's concerns do not entitle it to summary judgment.  The New Mexico Supreme Court has found "[f]or an employee to recover under this . . . cause of action, he must demonstrate that he was discharged because he performed an act that public policy has authorized or would encourage, or because he refused to do something required of him by his employer that public policy would condemn."  <u>Chavez v. Manville Products Corp.</u>, 777 P.2d 371, 375, 108 N.M. 643, 647 (N.M. 1989) (quoting <u>Vigil v. Arzola</u>, 699 P.2d 613, 620 (N.M. Ct. App. 1983)).  New Mexico courts have previously held that an employee's reporting of unsafe conditions to state officials is supported by public policy and that an employer's retaliation against the employee gives rise to a claim for retaliatory discharge.  <u>See</u> <u>Gutierrez</u>, 868 P.2d at 1272-73.

Here, Plaintiff asserts the conduct he engaged in was encouraged by public policy, specifically, 42 C.F.R. Part 483, Subpart B, related to long-term care facilities, as well as NMSA §§ 24-1-1 to 24-1-31 (2007), and NMAC § 7.9.2 (2007).  <u>See</u> docket no. 132 at 12.  The Court finds the evidence submitted by Mr. Prendergast creates a question of fact as to whether Valle Norte engaged in a retaliatory discharge of Mr. Prendergast due to his advising of state officials about the condition of the facility and the actions or lack thereof taken by management that may have violated federal and state health and safety regulations.

Ms. Felton states she was called by Mr. Dosher and informed that he felt like Mr. Prendergast was a loose cannon because "he took it upon himself to fix the problems in the

20

building and that his efforts were costing the company too much money" and should be fired. Id.  Ms. Felton indicated that she resigned her position due to her "observations of upper-management's lack of concern or attention to the safety and well-being of staff and residents." Id.  In May 2009, the New Mexico Department of Health came to Valle Norte to complete its annual inspection during which Mr. Prendergast was observed spending a significant amount of time with the inspectors.  Id., exhibit B.  On May 22, 2007, the Department of Health completed its written report based on its inspection of the facility.  Id., exhibit H.  The report indicated Mr. Prendergast had made comments to the state inspectors such as "the facility is aware of the problem (with the fire system) and has done nothing about it" and "the fire alarm system . . . is now antiquated and in need of replacement."  Id.  Mr. Prendergast was terminated the same day Valle Norte received the completed report from the Department of Health.  See id., exhibit Q. Due to the close proximity, the Court finds Valle Norte's third argument, that there is no causal connection between Mr. Prendergast's separation from employment and his actions with respect to protected activity, to be far-reaching and disingenuous.  The Court also finds there is a genuine issue of material fact as to whether Plaintiff has articulated a public policy interest that is protected under the New Mexico tort of retaliatory discharge.

With respect to Valle Norte's second argument, that Mr. Prendergast did not engage in "protected activity" because his normal job duties required him to gather and report safety information and concerns, the Court finds Valle Norte's assertion does not entitle it to summary judgment.  Valle Norte cites to the Whistleblower Protection Act and the Energy Reorganization Act, but does not city any federal or state court opinion interpreting the common law cause of action of retaliatory discharge in New Mexico to impose a requirement that, to recover for the

tort, a plaintiff must demonstrate he was acting outside the course of his normal job duties.  As such, the Court finds Valle Norte's second argument in support of its claim that summary judgment is appropriate on Plaintiff's retaliatory discharge claim to also be without merit.  As such, Valle Norte's Motion for Summary Judgment will be denied.

### C.      After-Acquired Evidence and Plaintiff's Motion for Summary Judgment

Valle Norte's motion for summary judgment alleges that if the Court denies its motion with respect to the substantive claims, after-acquired evidence should limit Plaintiff's alleged damages.  See docket no. 168 at 20-22.  Plaintiff moves for summary judgment on the same issue, so the Court will address both motions at the same time.  See docket no. 174.

In Defendants' Answer to Plaintiff's First Amended Complaint, Defendants allege that any and all actions they took with respect to Plaintiff were justified by after-acquired evidence and that Plaintiff's recovery is limited and/or barred by after-acquired evidence.  See docket no. 137 at 12.  Valle Norte cites the following misrepresentations as the basis for their after-acquired evidence defense:

> a.  Plaintiff stated on his résumé that he had obtained a high school diploma, when in fact, he had completed only half of the 12th grade;
>
> b.  Plaintiff stated on his résumé that he had a "certification" in "HVAC," plumbing, and electrical work;
>
> c.  Plaintiff made errors on his résumé as to the exact dates of employment at certain previously held jobs; and
>
> d.  Plaintiff failed to disclose an old conviction for failure to pay child support.

See docket no. 169 at 4-5, 20-21.

In McKennon v. Nashville Banner Publishing Co., the United States Supreme Court held that after-acquired evidence of misconduct by a former employee during the time of

employment, while not relieving the employer of liability, may be relevant to the issue of

damages.  See generally McKennon v. Nashville Banner Publishing Co., 513 U.S. 352 (1995);[3]

see also Perkins v. Silver Mountain Sports Club and Spa, 557 F.3d 1141, 1145 (10th Cir. 2009).

In applying McKennon, courts in the Tenth Circuit follow a two step process.  See Perkins, 557

F.3d at 1145.  First, the employer must establish that the wrongdoing was of such severity that

the employee in fact would have been terminated on those grounds alone if the employer had

known of it at the time of discharge.  See Ricky v. Mapco, Inc., 50 F.3d 874, 876 (10th Cir.

1995) (citing McKennon, 513 U.S. at 362-63).  Second, after an employee has met the initial

showing, the after-acquired evidence may then be considered to limit the damages remedy

available to the wrongfully terminated employee.  See id.

        In first addressing Valle Norte's motion, the Court finds Plaintiff has produced evidence

indicating no other Valle Norte employee has ever been terminated for failure to disclose a prior

conviction or arrest.  See docket no. 177 at 11 (citing docket no. 175, exhibits B, C, and D).

Plaintiff also relies on Defendants' Supplemental Interrogatory Responses to demonstrate that

there is no evidence that any other Valle Norte employee has ever been terminated for failure to

provide completely accurate dates of prior employment, for indicating he or she held

---

        [3] In McKennon, the plaintiff testified that, during her final year of employment, she had
copied several confidential documents bearing upon the company's financial condition – records
she had access to as secretary to the her employer's (the defendant) comptroller.  Plaintiff took
the copies home and showed them to her husband.  Her motivation, she averred, was an
apprehension she was about to be fired because of her age.  When she became concerned about
her job, she removed and copied the documents for "insurance" and "protection."  A few days
after these deposition disclosures, her employer sent her a letter declaring that removal and
copying of the records was in violation of her job responsibilities and advised her (again) that
she was terminated.  Her employer's letter also recited that had it known of Plaintiff's
misconduct it would have discharged her at once for that reason.  See McKennon, 513 U.S. at
355.

qualifications not required for his job, or for misrepresenting educational requirements, unless such requirements also constituted legal requirements set forth by the State of New Mexico.  See id. at 12 (citing docket no. 175, exhibits B, C, and D).  Additionally, although Plaintiff was arrested and paid restitution in connection with his child support payments, Mr. Prendergast claims he is still not sure whether he was actually convicted for the offense.  See id., exhibit A. Plaintiff also notes the employee handbook used by Valle Norte does not require termination of an employee in case of misrepresentation on an employment application.  See id. (citing docket no. 175, exhibit F).

The Court finds Valle Norte has failed to direct the Court to any evidence demonstrating that a Valle Norte employee was terminated as a result of misrepresenting a qualification that was required by Valle Norte only.  Though Valle Norte has introduced some evidence to support their affirmative defense of after-acquired evidence, it is not entitled to summary judgment on the issue because a question of fact exists as to whether the wrongdoing was of such severity that Mr. Prendergast would in fact have been terminated on the grounds raised by Valle Norte alone if Valle Norte had known of them at the time of discharge.  See Perkins, 557 F.3d at 1145. Therefore, the Court finds Valle Norte has not met its burden to obtain summary judgment on its affirmative defense of after-acquired evidence and the question of fact should go before the jury.

Next, in addressing Plaintiff's motion for summary judgment, the Court notes Plaintiff has alleged that because no genuine issue of material fact exists as to Defendants' affirmative defense of after-acquired evidence and because Defendants cannot meet their burden of proof as to the defense, summary judgment in favor of Plaintiff should be granted on the issue.  See docket no. 174.  A defendant attempting to rely on the affirmative defense of after-acquired

24

evidence must establish that the wrongdoing was of such severity that the employee in fact would have been terminated on those grounds alone if the employer had known of it at the time of discharge, and then, only after an employer has met the initial showing, the after-acquired evidence may be considered to limit the damages remedy available to the wrongfully-terminated employee.  See Perkins, 557 F.3d at 1145.  Here, Valle Norte has submitted evidence that Plaintiff's application for employment and his résumé contained information that Valle Norte was unaware of and was untrue.  See docket no. 169 at 4-5, 20-21.  Additionally, Valle Norte has submitted evidence that the employee handbook given to Mr. Prendergast indicates that "falsification of Facility records, including but not limited to [an] employment application" could result in immediate discharge.  See docket no. 175, exhibit F.  Finally, Valle Norte has submitted a sworn statement from Mr. Andujo, Mr. Prendergast's supervisor during the final days of his employment, acknowledging that he "was unaware of any misstatements that Mr. Prendergast made on his application or the résumé that he submitted with his application," but that if he would have known he "would have immediately discharged him for having lied on that application."  See docket no. 179, exhibit 2.

The Court finds Valle Norte has created an issue of fact as to whether Plaintiff is entitled to summary judgment on the Defendants' affirmative defense of after-acquired evidence and that the question of fact should go before the jury.  As such, Plaintiff's Motion for Summary Judgment will be denied.

### D.      Mitigation of Damages

Valle Norte also contends that Plaintiff's damages should be reduced as a matter of law because Mr. Prendergast has failed to properly mitigate those damages.  See docket no. 168 at

22-23.  In general, a plaintiff has the duty to mitigate lost wages by taking reasonable measures to locate comparable suitable employment.  See Ford Motor Co. v. EEOC, 458 U.S. 219 (1982).  A reasonableness standard is applied to contentions that a plaintiff has failed to mitigate damages.  See Minshall v. McGraw Hill Broad. Co., 323 F.3d 1273, 1287 (10th Cir. 2003).  The burden is on the employer to establish the lack of reasonable diligence.  See Spulak v. K Mart Corp., 894 F.2d 1150, 1158 (10th Cir. 1990).

To meet their burden, Valle Norte must demonstrate that (1) damages could have been avoided and suitable positions were available for which Plaintiff was qualified and (2) Plaintiff failed to use reasonable diligence in finding alternate employment.  See Huffman v. Ace Elec. Co., 883 F.Supp. 1469, 1477 (D. Kan. 1995).  Defendant contends Plaintiff failed to take reasonable measures to obtain an equivalent position and that substantial job opportunities existed.  See docket no. 168 at 22-23.  Valle Norte also asserts Plaintiff testified that he filled out 15 to 20 applications for employment in approximately 16 months and that he has not been employed since his employment with Valle Norte ended.  See id.  Additionally, Valle Norte points to a labor market survey by Dr. Roger A. Thrush ("Dr. Thrush"), a vocational rehabilitation expert retained by Defendant, which concluded Plaintiff was employable and that there was an active labor market in the Albuquerque area for maintenance technicians.  See docket no. 168, exhibit 2.

Whether a plaintiff used "reasonable efforts" to locate employment is determined by the economic climate, workers' skill, qualifications, age, and personal limitations.  Huffman, 883 F.Supp. at 1477.  A plaintiff need only make a reasonable and good faith effort to mitigate his damages and is not held to "the highest standard of diligence."  Spulak, 894 F.2d at 1158.  Here,

26

in support of his position, Plaintiff cites to Dr. Thrush's report, specifically, his opinion that Mr. Prendergast could not expect to earn wages comparable to those earned at Valle Norte in the Albuquerque job market.  Additionally, Plaintiff has testified that despite feeling ill a great deal of the time after his employment with Valle Norte had ended, he still applied for between 15 and 20 positions and has subsequently applied for 7 more, in addition to making a number of inquiries as to whether various employers were hiring.

The Court finds, in analyzing the burden imposed by the Tenth Circuit on a plaintiff to mitigate his or her damages, that Mr. Prendergast has submitted enough evidence in this case to preclude the Court from finding that Plaintiff's efforts to mitigate his damages were inadequate or unreasonable as a matter of law.  See Enslinger v. United States Cent. Credit Union, 866 F.Supp. 491, 499 (D. Kan. 1994).

**WHEREFORE,**

**IT IS HEREBY ORDERED** that Defendant Valle Norte's Motion for Summary Judgment (docket no. 168), Plaintiff's Motion for Summary Judgment (docket no. 172), Defendant's Motion to Strike (docket no. 185), and Plaintiff's Motion to Strike and for Sanctions (docket no. 189) are all **DENIED**.

**SO ORDERED** on this 13th day of August, 2009.

_____
UNITED STATES MAGISTRATE JUDGE